19478

Barbara L. THEVENOT and Sara Mae Gillard, as Executrix of the Estate of Andre M. Thevenot, Respondents, v. The COMMERCIAL TRAVELERS MUTUAL ACCIDENT ASSOCIATION OF AMERICA, Appellant.

(191 S. E. (2d) 251)

236

Joseph R. Young, Esq., of Young, Clement & Rivers, for Appellant,

Messrs. G. M. Howe, Jr., and Coming B. Gibbs, Jr., of Gibson, Gibbs & Krawcheck, Charleston, for Respondents,

August 30, 1972.

BRAILSFORD, Justice.

Plaintiff was tried for the murder of her husband and acquitted. Thereupon, she brought this action against the

defendant insurance company on a policy insuring him against accidental death, of which she was beneficiary.

The defendant's answer to the complaint alleged that the insured's death was a foreseeable consequence of his own conduct, and therefore not accidental within the meaning of the insurance contract. Plaintiff moved for summary judgment, accompanying the motion with an affidavit of her counsel asserting that certain documents attached thereto "fairly stated the evidence concerning the death of the insured." These documents are referred to in the record as comprising "the Solicitor's file" concerning the death of the husband. The transcript of record does not contain counsel's affidavit. The only relevant documents appearing in the record are five unsworn statements—four by law enforcement officers and one by an eyewitness to the shooting which resulted in the insured's death. The trial judge's order states that the appellant countered with an affidavit of its own, but nothing identified as such appears in the record. The trial judge granted the motion for summary judgment, holding that "(t)he evidence would not permit a jury to find that the insured should have foreseen that his conduct would bring about the injury from which he died."

Circuit Court Rule 44(d), detailing the mechanics of motion for summary judgment, provides in part:

"Supporting and opposing affidavits shall be made on personal knowledge, or, if on information and belief shall state the sources of such, shall set forth only such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. . . ."

Counsel's affidavit, at best, could only have asserted that the unsworn statements submitted therewith were true on information and belief. Most of the unsworn statements themselves contain nothing but hearsay regarding the events

at issue. At critical points, the information they contain is sketchy and sometimes self-contradictory. The appropriateness of granting summary judgment on evidence of this character is doubtful. However, appellant is content to assert that the various statements accompanying plaintiff's affidavit, taken as true, are insufficient to support the order. We, therefore, proceed to consider whether these statements establish that there was "no genuine issue as to any material fact . . ." Rule 44(c).

As with a motion for directed verdict, all inferences from the materials before the trial court must be drawn against the movant, and in favor of the party opposing the motion. See *United States v. Diebold, Inc.,* 369 U. S. 654, 82 S. Ct. 993, 8 L. Ed. (2d) 176 (1962), interpreting Rule 56 of the Federal Rules of Civil Procedure, the model for our Rule 44. Summary judgment "should be granted only where it is clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law. . . . And this is true even where there is no dispute to the evidentiary facts in the case but only as to the conclusions to be drawn therefrom." *Stevens v. Howard D. Johnson Co.,* 181 F. (2d) 390, 394 (4th Cir. 1950).

Viewed most favorably to the appellant, the materials before the trial court present the following pretinent facts.

The insured, one Thevenot, who was sixty-three years old, had been living apart from his wife, the plaintiff, for five months. Thevenot had a continuing relationship with a woman thirty-six years his junior, one Mrs. Cromeans. The plaintiff suspected the two of having an affair.

On the afternoon of October 23, 1969, the plaintiff accused Mrs. Cromeans of having in her possession certain vases wrongly taken from plaintiff by her husband. The plaintiff called the police for help in recovering her property, but they took no action when Mrs. Cromeans claimed the vases belonged to her.

Later that evening, Mrs. Cromeans summoned Thevenot. They discussed the matter over a few drinks, whereupon

Thevenot determined that they should confront his wife and "straighten out" the problem. When the two arrived at plaintiff's home, Thevenot insisted on bringing Mrs. Cromeans in over plaintiffs protest. Plaintiff ordered "that woman" to leave; Thevenot bade her stay. Plaintiff went into her bedroom, called her attorney, and tried to call the police. Mrs. Cromeans, who had followed her into the bedroom, cut off the call by pressing the button on the telephone. At that point the plaintiff took a pistol from her nightstand and threatened to shoot Mrs. Cromeans unless she left the house. Mrs. Cromeans refused to move. Thereupon, Thevenot took hold of his enraged wife and tried to disarm her forcibly. In the ensuing struggle the weapon discharged, killing Thevenot.

We think it to be reasonably inferable that none would have been hurt if Thevenot had prudently escorted his young friend from the house when his wife first brandished the pistol commanding that she get out. Instead, he chose to grapple with an enraged woman armed with a pistol. Whether this course would have appeared as foolhardy, involving foreseeable and unreasonable risk of serious bodily injury or death, to a reasonably prudent man in the insured's position, as hindsight shows that it was, is a question for a jury.

Reversed and remanded.

Moss, C. J. and Lewis, Bussey and Littlejohn, JJ., concur.