18209

Charles Edward WATSON, Respondent, v. WILKINSON TRUCKING COMPANY, Appellant

(136 S. E. (2d) 286)

218

*Messrs. Rufus M. Ward* and *Ward, Hammett & Howell,*
of Spartanburg, *for Appellant,*

*James R. Turner, Esq.,* of Spartanburg, *for Respondent,*

May 7, 1964.

LEWIS, Justice.

The defendant has appealed from a verdict of $40,000.00, actual damages, awarded against it for personal injuries sustained by the plaintiff when the automobile driven by him collided with a truck tractor and trailer of the defendant. In this appeal, the defendant apparently concedes that the evidence made a jury issue as to negligence on the part of the driver of its truck, but charges error on the part of the lower court (1) in denying defendant's timely motion for a directed verdict upon the ground that the evidence conclusively showed that the plaintiff was barred of recovery by his own contributory negligence, and (2) in refusing the defendant's motion for a new trial upon the ground that the verdict was so excessive as to show that the jury was influenced by caprice, passion, prejudice, or other considerations not founded upon the evidence.

In resolving the foregoing issues, it is well settled that the testimony and the reasonable inferences to be drawn therefrom must be viewed in the light most

favorable to the plaintiff. Our review of the testimony is so limited.

The collision, out of which this action arose, occurred between Spartanburg and Greenville, South Carolina, on U. S. Highway No. 29, approximately four miles west of Spartanburg. Highway No. 29 is a four-lane highway, consisting of two roadways separated by a median strip and providing two lanes for traffic in each direction. The median strip between the two roadways varies in width along the highway and was approximately five hundred feet wide at the point of the collision. The separate one-way roadways are connected at intervals by paved crossovers for the use of traffic desiring to exchange from one roadway to the other. The accident occurred on the roadway for traffic proceeding from Spartanburg to Greenville at or near one of the paved crossovers. At that point, there is an unimproved dirt road leading northward from the paved highway and the crossover leads south to the roadway for traffic proceeding to Spartanburg from Greenville. The posted speed limit was 55 miles per hour. Signs were in place at intervals along the highway advising traffic that left turns from the road must be made from the left lane only.

When the accident occurred, both vehicles were proceeding from Spartanburg towards Greenville and the plaintiff was in the act of passing the truck of the defendant. Before reaching the scene, the vehicles had passed over the crest of a rather long hill. The plaintiff testified that, as he was going up this hill at a speed of approximately 55 miles per hour, he turned into the left lane of the roadway and passed another automobile. As he passed over the crest of the hill, he saw the defendant's truck travelling ahead of him in the right-hand lane at a speed of 25 to 30 miles per hour. The plaintiff continued in the left lane of the road intending to pass but, when he came within 100 to 150 feet of the defendant's truck, it suddenly turned from the right-hand lane in which it was travelling, without signal or warning of any kind, directly across the left lane blocking the path

of the plaintiff's automobile. The left turn by the defendant's truck was being made for the purpose of entering the paved crossover connecting the two roadways. The plaintiff applied his brakes in an effort to avoid the collision, but could not, and struck the rear of the defendant's trailer.

The defendant's version of the collision, as given by the driver of its truck, was that the plaintiff ran into the rear of the truck as it was in the process of making a left turn from the left-hand lane of the roadway into the paved crossover, after proper signals were given of the intention to make such turn.

■ Error is first charged in the refusal of the lower court to direct a verdict in favor of the defendant on the sole ground that the plaintiff was guilty of contributory negligence as a matter of law in attempting to pass the defendant's truck at an intersection in violation of Section 46-388 of the 1962 Code of Laws. The portions of Section 46-388, relied upon by the defendant, are as follows:

"No vehicle shall at any time be driven to the left side of the roadway under the following conditions: * * *

(2) When approaching within one hundred feet of or traversing any intersection * * *."

The collision occurred at or near the point where the paved crossover and a dirt road intersected the one-way roadway. The defendant contends that the foregoing constituted an *intersection* within the meaning of Section 46-388 and that the plaintiff, in driving to the left of the center line while attempting to pass defendant's truck, violated the statutory prohibition against driving to the left of the center of the roadway when approaching within 100 feet of or traversing an intersection, and constituted contributory negligence as a matter of law.

It is undisputed that the collision occurred while the parties were travelling upon a one-way roadway. The contention of the defendant that Section 46-388 governed the plaintiff in the operation of his vehicle at the time com-

pletely overlooks a further provision of that statute, which states that the limitations imposed therein "shall not apply upon a one-way roadway." Therefore, since the collision occurred upon a one-way roadway, the foregoing statutory prohibition against driving to the left of the center line was inapplicable.

The testimony further shows that there were no signs posted where the wreck took place, or markings of any kind, prohibiting a vehicle from being driven to the left of the center line of the roadway. Section 46-389 of the 1962 Code of Laws.

■ Since there was no statute or posted sign prohibiting the plaintiff from driving to the left of the center line to pass the truck of the defendant at the point in question, his actions in so doing, in so far as the issues in this appeal are concerned, were governed only by the common law rules requiring the exercise of due care.

■ While the testimony is conflicting, it is susceptible of the reasonable inference that at the time of the collision the plaintiff was proceeding to pass the truck of the defendant in a lawful manner. On the other hand, there is evidence that the driver of the defendant's vehicle turned from a direct course and moved left upon the roadway without taking any care or precaution to see that such movement could be made with reasonable safety, in violation of Section 46-405; that he attempted a left turn from the right-hand lane, in violation of the posted highway signs; and that he failed to give a signal indicating his intention to make a left turn, in violation of Section 46-407. Under all of the facts, the issues of negligence, contributory negligence, and proximate cause were properly submitted by the lower court to the jury for determination. *Jumper v. Goodwin*, 239 S. C. 508, 123 S. E. (2d) 857.

The remaining question to be decided is whether the verdict for $40,000.00 actual damages is so grossly excessive as to indicate caprice, passion, or prejudice on the part of

the jury. The trial judge did not consider the verdict excessive and refused to reduce the amount or set it aside.

The question of whether a verdict awarded for unliquidated damages is excessive presents a difficult problem; for the amount which a jury might properly award in such cases cannot be determined with any degree of certainty, but is largely a matter of judgment based upon the facts and circumstances of each case. In determining the question, the facts must be viewed in the light most favorable to the plaintiff and, where the amount of a verdict bears a reasonable relationship to the character and extent of the injury sustained, it is not excessive.

The rule governing review of the verdict in this case on the ground of excessiveness is concisely stated in *Nelson v. C. & W. Carolina Rwy. Co.*, 226 S. C. 516, 86 S. E. (2d) 56 as follows: "As was pointed out in *Bowers v. Charleston & W. C. Ry. Co.*, 210 S. C. 367, 42 S. E. (2d) 705, and again in *Vernon v. Atlantic Coast Line R. Co.*, 221 S. C. 376, 70 S. E. (2d) 862, this court will not undertake to set aside a verdict because its amount is such as to indicate merely undue liberality on the part of the jury. The power in such case to set it aside, or reduce it by granting a new trial *nisi*, rests with the trial judge alone. It is only when the verdict is so grossly excessive as to indicate that the jury was moved by passion or prejudice or other considerations not founded on the evidence and the instructions of the trial court, that it becomes the duty of this court, as well as of the trial court, to set it aside absolutely."

The elements of damage for which the plaintiff seeks recovery in this case relate solely to the personal injuries allegedly sustained by him in the collision with defendant's truck. There was testimony that the plaintiff now has a permanent disability from a ruptured disc in his back and an impairment of the use of his right leg and hip. The controversy as to the amount of the verdict arises over the respective contentions of the parties as to the extent of

plaintiff's disability which may be properly attributed to the injuries received in the collision in question. The defendant contends that most, if not all, of plaintiff's present disability is due to a previous injury to his right hip, for which the defendant is not responsible.

The plaintiff is a young married man, 27 years of age when he received the personal injuries for which recovery is now sought. When he was 14 years of age, he sustained a severe injury to his right hip while playing football, which resulted in his right leg becoming a little shorter than his left. This injury left the right hip in a damaged condition. The doctors described it in medical terms as an " aseptic necrosis of the femural head." The plaintiff testified that he had a good recovery from his injury and subsequently played football again. He stated that in the intervening years the hip did not give him any trouble, nor did it require treatment of any kind until after the collision with defendant's truck.

The plaintiff is a textile worker and had worked in the mills near Spartanburg, South Carolina, for a period of approximately ten years preceding the accident, losing only four days from work during the last three or four years of that time. He testified that he worked sixteen hours on the day before the accident, and was on his way to work when the collision occurred. His job was that of a color mixer in the printing department of the mill for which he worked. This work required considerable stooping and lifting which he was able to perform without difficulty. In addition, the plaintiff engaged in sporting activities, such as bowling, golf, fishing and hunting.

The only other prior medical history of the plaintiff related to consultation by him with Dr. W. D. Hastings, Jr., in March, 1962, about one month prior to the collision, in regard to a backache. Dr. Hastings diagnosed the plaintiff's backache as muscular and caused by the fact that the childhood injury to his hip had left the right leg shorter than the other. This was corrected by building up the

shoe worn on the shorter leg. Following this treatment, the backache disappeared and plaintiff returned to full time work. X-rays taken at that time revealed that the plaintiff's back and spine were normal.

On April 17, 1962, while on his way to work, the plaintiff was injured in the collision with defendant's truck. He went to Dr. Hastings on the same day for treatment of the injuries received. At that time, both of plaintiff's knees were severely abraded and bruised from the collision, with moderate swelling present. His right hip, which had been previously injured, was causing him severe pain, so much so that the right leg could not be straightened or motion tolerated. Subsequently, the plaintiff began complaining of pain in his back and, as a result of further examinations, Dr. Hastings concluded that, in addition to the injury to the hip, the plaintiff had suffered a ruptured disc.

The plaintiff stayed away from work the day following the accident and then returned to work for six days. He was unable to continue and was subsequently away from work for approximately twenty weeks, returning to work on September 17, 1962. When he returned to work, the plaintiff was unable to perform the work incident to his old job and was given lighter work by his employer. However, due to his physical condition, he has not been able to work regularly. His average weekly earnings for the first eleven weeks in 1962, prior to the injury, amounted to $117.07, including considerable overtime, but were $49.50 less during the comparable period in 1963 after his injury. The doctor has advised the plaintiff against doing any work requiring stooping, bending, or lifting, and has recommended that he enter a trade school so as to become trained to do some sedentary type of work. The fact that the plaintiff is not a high school graduate has kept him from meeting the entrance requirements of the trade school. The present physical condition of the plaintiff prevents him from engaging in his former sporting activities.

The medical testimony is to the effect that the injuries received by the plaintiff on April 17, 1962, have resulted in an aggravation of the pre-existing condition of his right hip and, in addition, a ruptured disc in the back. His physical condition causes severe pain, for the relief of which medication is required. The doctors estimate that he now has a disability of the right leg of approximately 30% and will have at least a 15% disability from the back injury. They refused to give an estimate of the percentage of disability of the right leg and hip which might be attributable to the childhood injury. There is also testimony relative to operation procedures which might be performed to alleviate the present condition of the plaintiff, but it is fairly inferable from the record that, if such operations were performed, the foregoing disability percentages would not be materially affected, and might be increased.

By way of summary, we have a situation where the plaintiff sustained a serious injury to his hip when he was about 14 years of age. Although the hip was permanently damaged and might in the normal course of events be expected to get worse, he adjusted to any functional loss therefrom, so as to be able to engage in normal activities, including full time employment involving stooping, bending and lifting, without pain or further treatment. On April 17, 1962, approximately 14 years later, the plaintiff was injured in a collision with the truck of the defendant. As a result of such injuries, the plaintiff has suffered severe pain and has been unable to engage in the former full time employment or engage in his former normal sporting activities, with an attendant substantial loss in earning power. The injuries received in the accident on April 17, 1962, have brought about a severe aggravation of the pre-existing condition of the hip and has caused a ruptured disc in the back. There is testimony from which the conclusion can reasonably be drawn that plaintiff has sustained permanent injuries of a disabling nature as a result of the negligent acts of the defendant. The plaintiff's life expectancy is approximately 40 years.

228

The plaintiff was entitled to recover all damages proximately resulting from the negligent acts of the defendant, including the aggravation of his pre-existing condition. 15 Am. Jur., Damages, Sections 80 and 81. The elements of damage which the jury could properly consider in determining the amount which plaintiff was entitled to recover included his loss of earning power, pain and suffering, and medical expenses, including any future damages resulting from permanent injuries. These cannot be determined with certainty, and the monetary value to be placed upon them was a matter resting within the sound judgment of the jury. The testimony sustains the conclusion, however, that the damages suffered by the plaintiff were extensive and permanent in nature. While the verdict of the jury is substantial, we cannot say under the facts here that it bears no reasonable relationship to the character and extent of the injury and damage suffered by the plaintiff.

Affirmed.

TAYLOR, C. J., and MOSS, BUSSEY and BRAILSFORD, JJ., concur.